## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

VIVIAN MARTIN                          :
2824 West 6th Street                   :
Chester, PA 19013                      :        CIVIL ACTION
        Plaintiff      :
                                 :        NO.
                                 :
        v.                :        JURY TRIAL DEMANDED
                                 :
THE BOEING COMPANY  d/b/a  BOEING      :
100 North Riverside Plaza              :        COMPLAINT
Chicago, Illinois 60606               :
                       :
        Defendant         :

## COMPLAINT

1.  Plaintiff, Vivian Martin,  an African-American female and practicing Muslim (hereinafter "Plaintiff" or " Mrs. Martin") has been discriminated against on account of her race and religion, having been unfairly targeted, penalized and retaliated against as a result of raising claims of discrimination by her employer, Boeing (hereinafter "Defendant" or "Boeing"). Moreover, she has been subjected to a racist and discriminatory atmosphere which pervades, of all places, the Human Relations Department in which she has worked at Defendant's Ridley Park, Pennsylvania facility. The discrimination has consisted of deliberate and repeated refusals to allow her to progress to other positions on account of her race and religion. After reporting the discrimination internally and filing a charge of discrimination with the EEOC, Plaintiff has continued to be harassed and retaliated against, with management allowing the discrimination to continue and the illegal working environment to prevail. The discrimination as, well as the illegal environment, have all been countenanced and supported by management.  Mrs. Martin now seeks to recover compensatory and punitive damages pursuant to 42 U.S.C. § 1981, Title VII of

the Civil Rights Act of 1964, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S.

§951 *et seq.*

## PARTIES

2.      Plaintiff Vivian Martin is an adult female born on November 8, 1966 who resides

in the Commonwealth of Pennsylvania.  She has been continuously employed by Defendant from

1993 through to the present, having worked and remained in the Human Resources Department

since 1999 with her current position being a Level III employee in "Employee Wellness."  As an

African-American female and practicing Muslim she is a member of a protected category of

individuals under pertinent civil rights statutes.

3.      Defendant, The Boeing Company d/b/a Boeing was founded by William Boeing

on July 15, 1916 in Seattle.  It a publicly-traded Delaware corporation headquartered at 100

North Riverside Plaza, Chicago, Illinois 60606. It touts itself as being "the world's largest

aerospace company and leading manufacturer of commercial jetliners, defense, space and

security systems, and service provider of aftermarket support."  It cites some 473 supplier and

vendor locations in Pennsylvania as well as 4,580 employees in Pennsylvania of which Plaintiff

is just one employee, as defined by Title VII of the federal Civil Rights Act and the Pennsylvania

Human Relations Act, presently working  at Defendant's facility located at 1 South Stewart Ave,

Ridley Park, PA 19078.

4.      At all relevant times hereto, Defendant acted by and through its duly authorized

actual and/or apparent agents and employees, including but not limited to Mrs. Melissa Freas and

Ms. Lori Smith, acting within the course and scope of their actual and/or apparent agency and

employment.

## JURISDICTION AND VENUE

5.      This Court has federal question jurisdiction over the subject matter of Plaintiff's claims under federal law pursuant to 28 U.S.C. §1331.

6.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367, because the state claims and federal claims are so interrelated that they form part of the same case or controversy under Article III of the United States Constitution.

7.      Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. §1391(b) and (c) since Plaintiff and Defendant reside and/or do business in the Eastern District of Pennsylvania and the events or omissions giving rise to Plaintiff's claims occurred in the Eastern District of Pennsylvania.

## FULFILLMENT OF TITLE VII CONDITIONS

8.      Plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII and PHRA.  Plaintiff dual-filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRA") on or about March 9, 2020. The EEOC assigned her charge # 267-589-9718.

9.      The EEOC issued a Right to Sue letter to the Plaintiff on August 3, 2020 with respect to her charge.  This lawsuit has been timely filed as it has been brought within ninety (90) days of the issuance of the Right to Sue letter.

## FACTUAL ASSERTIONS

10.     Plaintiff has been employed by Defendant since 1993, initially in office administration. In 1999, Mrs. Martin went to the Human Relations department at the Ridley Park facility, an office with roughly 15 people employed there. At most times, Plaintiff has been the

3

only black employee in the department and as such has been treated differently from others.
There are now two blacks in her department. The discrimination exacerbated when she became a
practicing Muslim. She remains the only Muslim in the department.  Notwithstanding,
throughout her tenure in Human Resources, Plaintiff has had the desire to help fellow employees
in what she has felt is the critical responsibility of Human Relations. Her goal has been to fulfill
those responsibilities and  move up through the ranks to obtain promotion to  Level IV and
beyond. Unlike non-minority, non-Muslim employees, she has intentionally been blocked from
doing so.

11.     In 2002, HR Manager Jim Caesar promoted her from Level I to Level II and said
that he would move her to Level III.  He told Plaintiff that he could not understand  her situation
of having been held back from career progression,  clearly recognizing that she could do the
work and had the  potential to grow. However,  Mr. Caesar left before he could raise Plaintiff to
Level III.

12     Subsequently, Plaintiff has principally reported to managers Mrs. Melissa Freas
and Ms. Lori Smith, both white managers who have openly expressed the fact that they did not
like Plaintiff. One example occurred in 2007 when Plaintiff was promoted to Level III and Ms.
Smith made the point of disdainfully looking at the ceiling. At another point Senior Manager
Freas would often scream at Plaintiff so that others could hear.  When Plaintiff asked Ms. Smith
what the issue was between them, Ms. Smith admitted that she simply didn't like her.  Plaintiff
was repeatedly shuffled between Mrs. Freas and Ms. Smith as her managers until Ms. Smith was
removed from HR management in or around 2016/2017.

13.    The year 2007 was the last time that Mrs. Martin received a promotion, with her
salary barely adjusted for inflation. This is despite 23 years of experience, a BS in Liberal Arts

from Neuman College in 2004 and a Masters in Strategic Leadership from Neuman College in 2006. Remaining in a Level III position, Plaintiff currently makes a salary of approximately $92,000.

14.     In April of 2009, Plaintiff was placed in a position pertaining to Reasonable Accommodations, which she held until approximately 2015 without being compensated for the additional responsibilities. Moreover, Plaintiff did not receive the proper training for the position. Another example of racial intolerance in HR came with a Reasonable Accommodations request by another employee. On August 19, 2011, Mrs. Freas and Ms. Smith called Plaintiff into Mrs. Freas' office to discuss the employee's request. During the meeting, Ms. Smith asked Plaintiff: "Is she black too?", suggesting that it was always and only blacks who apply for reasonable accommodations.

15.     In 2011, Mrs. Martin converted to Islam and announced this to co-workers, asking them if they had any questions. Despite working in the Human Relations Department, itself responsible for promoting tolerance and legal compliance within Boeing, it became clear to Plaintiff that she was feared and isolated, not only due to her race, but now due to her religion. Indeed, she was told as much. One example of the kind of ignorance fostered throughout the HR Department was that admitted to by Mr. Don Hudson, a manager. He admitted to Mrs. Martin that when she converted "I thought that I couldn't talk to you anymore." Moreover, she was repeatedly told by her Manager Freas, that she was not a "team player", that she "did not engage", that "something is always the matter with you", "you are shutting down", and "they are afraid of you."

16.     As a result of her Muslim conversion, Plaintiff was specifically told by Senior Manager Freas in 2012 to never interact with or support the hourly Boeing population, because

of her religion. "Because you converted to Islam, I couldn't have you out there." Plaintiff was told that 90% of the HR Department doesn't like her. Plaintiff was criticized about her purported negative body language and accused of rolling her eyes. In 2012, Mrs. Freas, while deliberately pointing her finger in Plaintiff's face, told Plaintiff that she would never be promoted. Plaintiff was so upset that she had to go to Health Services. She also went to see HR Director Dave Bouse, who instead of taking Plaintiff's side, told her to calm down and go back to talk to Ms. Freas. True to Mrs. Freas' threat, to date, Plaintiff has not been promoted. Moreover, to date, no African-American in HR has never been promoted to a level IV in her business unit.

17.     In retaliation for Plaintiff's standing up for herself and on account of nepotism, Plaintiff was moved to various different positions in different buildings and kept from the kind of advancement and better pay which would come from being a "business partner", supporting a director, let alone achieving Level IV status. Furthermore, Plaintiff felt as if she was made to do something unethical when Ms. Freas directed her to do a $5,000 salary adjustment and not leave a paper trail for another manager whom Ms. Freas had once dated. In 2018, Mrs. Freas' sister-in-law was hired who in turn harassed Plaintiff by telling management that Plaintiff was not being cooperative.

18.     Plaintiff has repeatedly been threatened with being placed on a Performance Improvement Plan ("PIP") if she refused to be shuffled to fill various different positions. Eventually, Plaintiff was placed on a PIP in 2017. She was so upset that Plaintiff called Boeing executive Scott Drach and asked how it was that a twenty-four-year employee who never had a problem was subjected to this and threatened with firing if she did not take another position in Fact Finding. In 2019, again upon threat of being placed on a PIP, Plaintiff was moved out of her Fact-Finding role to a Wellness role in favor of Mrs. Freas' sister-in-law. A recurring

example of discrimination directed at Plaintiff and Defendant's illegal environment was

Plaintiff's being repeatedly threatened with a PIP or firing if she refused to move to a different

position.

19.     Other indications of the illegal working environment in HR suffered by Plaintiff

include the following:

        - A noose was found in the facility and this occurrence was not the first time.

Incredibly enough, an HR Director no less,  Richard Hendin asked Plaintiff why black people get

so upset about a noose.

        -On Tuesday, June 20, 2017, Plaintiff entered the ladies room and proceeded to

one of the stalls.  As plaintiff entered the first stall, plaintiff noticed it was very dirty and not

flushed, so plaintiff proceeded to the second stall. In the meantime, another Caucasian female

employee entered the ladies room,  Ms. Cynthia Dowling. She proceeded to grab Plaintiff around

her waist and attempted to pull her out of the stall she was entering. Plaintiff, in  shock, grabbed

for the stall door in an effort to break her  fall.  After the incident, Plaintiff was unable to focus

or concentrate, in total disbelief of what had just happened.  Plaintiff advised management, Ms.

Barbara Filler, of what happened.  Ms. Dowling subsequently  admitted to Plaintiff that she

didn't know what came over her, admitted that she was disrespectful and that she should not

have touched her. Moreover, Ms. Dowling made a point of stating that   she was sorry because

she had offended her religion. Fully indicative of Management's affirmative disregard for proper

HR practice and the law, Ms. Filler wanted Plaintiff to delete the report of the incident from the

system. Plaintiff refused to do so.

        -Every car Plaintiff purchased was either keyed/scratched or had it front lights

broken  during her tenure in HR.

-At times, Plaintiff would enter the HR office only to find her name tag upside down or completely flipped over.

-Other HR Generalists did not want to work with Plaintiff and some outright called her a "bitch", "incompetent" or other vile terms consistent with an illegal atmosphere maintained by Defendant

20.     Plaintiff has repeatedly been made by her managers to look like a fool , be branded illiterate, and made to look incompetent. For example, in 2014 a team meeting took place after Mrs. Freas had been embarrassed by another employee the day before. Instead of focusing on what transpired the day before, Mrs. Freas focused on criticizing Plaintiff, including making the claim that Plaintiff was slapping her lips, sighing, rolling her eyes.

21.     The incidents only partially described herein and others like it  caused Plaintiff to file internal complaints going back to 2012 over her discriminatory treatment. Notwithstanding, Defendant deemed the complaints by Plaintiff not to have any basis. As a result,  eventually Plaintiff was forced to file her charge with the EEOC.

22.     Starting back as far as 2012 and proceeding right up to the present time, Plaintiff has applied for various Level IV positions. This includes recent applications as follows:

- April 4, 2019 application for Human Resource First-Line Manager

-September 22, 2019 application for Global Diversity & Inclusion Manager

-December 10, 2019 application for First Line Fact Finding Manager

-February 4, 2020 application for SR. Corporate Investigator.

- February 18, 2020 application for Ethics & Compliance Position

Despite her qualifications, Mrs. Martin did not receive so much as an interview for any of these jobs and was never promoted. At least eight others people have been brought in as level IV. None of them were black

23.     With the acquiescence and support of senior management, Plaintiff's managers regularly exhibited favoritism toward white employees, harassing and discriminating against Plaintiff on account of her race and religion and maintaining a hostile work environment when it came to her conditions of work and opportunities for advancement.

## COUNT I
### VIOLATION OF THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981

### Vivian Martin vs. Boeing

24.     Plaintiff restates and realleges all previous paragraphs as though fully set forth herein.

25     Defendant has discriminated against Plaintiff by denying her the same rights as are enjoyed by white employees with respect to performance, terms, location, conditions, benefits, privileges, promotion, discipline and emoluments of their employment relationship with the Bank, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

26.     Defendant's conduct has been intentional, deliberate, willful, and conducted in callous disregard of the rights of Plaintiff.

27.     By reason of the continuous nature of Defendant's discriminatory conduct, persistent throughout Plaintiff's employment with Defendant, she is entitled to application of the continuing violation doctrine to all of the violations alleged herein.

28.     By reason of Defendant's discrimination, Plaintiff is entitled to all legal and equitable remedies available under § 1981, including but not limited to damages for mental anguish and emotional distress, reasonable attorney fees and costs, as well as punitive damages.

9

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant and requests an award of damages including, but not limited to compensatory damages, including any and all recoverable economic and noneconomic loss, punitive damages, reasonable attorneys' fees and costs, and other relief as permitted under the law and as this Court deems just and proper.

## COUNT II

**RACIAL AND RELIGIOUS DISCRIMINATION, RETALIATION AND MAINTENANCE OF A HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000e *et seq***

**Vivian Martin vs. Boeing**

29.     Plaintiff restates and realleges all previous paragraphs as though fully set forth herein.

30.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, *et seq.* as amended by the Civil Rights Act of 1991 ("Title VII), makes it unlawful for employers to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race and/or religion.

31.     Discrimination on the basis of race and religion that creates an abusive and hostile work environment, such that the conditions of employment are altered, is actionable under Title VII as racial and religious discrimination. In order to establish a hostile work environment, five factual elements must be established: (1) that the employee suffered intentional discrimination because of his or her race or religion; (2) that the discrimination detrimentally affected him or her; (3) that the discrimination was pervasive and regular; (4) that the discrimination would detrimentally affect a reasonable person in the same position as the employee; and (5) that

respondeat superior liability exists. In the totality of circumstances, when it comes to Plaintiff's treatment, the foregoing five elements are established.

32.     Defendant retaliated against Plaintiff as a result of her complaints of discriminatory treatment and a hostile work environment.

33.     Defendant is liable for discrimination alleged herein under the doctrine of *respondeat superior* due to the actions and statements of its managers and employees.

34.     Defendant is liable for the acts of management and Plaintiff's co-workers, because it knew of the existence of a discriminatory and a hostile work environment, but allowed the illegal acts and practices to continue.

35.     Defendant is liable for the acts alleged herein because of its culture of encouraging racial discrimination, harassment and retaliation.

36.     Based upon the foregoing facts, Defendant has discriminated against Plaintiff on the basis of her race and religion and has retaliated against her for standing up for herself, in deprivation of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et. seq. as amended.*

37.     Defendant unlawfully retaliated against Plaintiff for filing charges internally and with the EEOC and the Pennsylvania Human Relations Commission.

38.     The described unlawful employment practices by Defendant were intentional, deliberate, willful and were with malice or reckless indifference to Plaintiff's rights protected by the laws of the United States, as well as the laws of the Commonwealth of Pennsylvania.

39.     By reason of Defendant's discrimination, retaliation and maintenance of a hostile work environment, Plaintiff is entitled to all legal and equitable remedies available.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant and requests an award of damages including, but not limited to compensatory damages, including any and all recoverable economic and noneconomic loss, punitive damages, reasonable attorneys' fees and costs, and other relief as permitted under the law and as this Court deems just and proper.

## COUNT III

### RACIAL AND RELIGIOUS DISCRIMINATION, RETALIATION AND MAINTENANCE OF A HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT

### Vivian Martin vs. Boeing

40.. Plaintiff restates and realleges all previous paragraphs as though fully set forth herein.

41 This claim arises under the Pennsylvania Human Relations Act ("PHRA"). The Pennsylvania Human Relations Act, 43 P.S. § 955 *et seq.*, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race and/or religion.

42. Plaintiff, as a Muslim African-american in a protected class because of her race and religion.

43. Based upon the foregoing facts, Defendant has discriminated against Plaintiff on the basis of her race and religion and has deprived her of her rights in violation of the Pennsylvania Human Relations Act, 43 P.S. § 955 *et. seq.*

12

44.    The effect of the aforementioned practices has been to deprive Plaintiff of equal employment opportunities and adversely affect her status as an employee because of her race and religion.

45.    Racial discrimination that creates an abusive and hostile work environment, such that the conditions of employment are altered, is actionable under the Pennsylvania Human Relations Act as race discrimination.

46.    With respect to allegations of discrimination and retaliation, Defendant is liable for the acts of its supervisory and management employees, because the harassers and those who effectuated the discrimination used their actual or apparent authority to further the unlawful conduct, and were otherwise aided in accomplishing the unlawful conduct by the existence of an agency relationship.

47.    Defendant is liable for the acts alleged herein because its managers and supervisors established its corporate culture which encouraged racial and religious discrimination as well as a hostile work environment.

48.    The described unlawful employment practices and actions by Defendant were intentional and were done with malice or reckless indifference to Plaintiff's rights protected by the laws of the Commonwealth of Pennsylvania.  These unlawful acts were committed because of her race and the fact that she stood up for herself in opposition to illegal practices directed against her.

49.    By reason of Defendant's discrimination, retaliation and maintenance of a hostile work environment, Plaintiff is entitled to all legal and equitable remedies available.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant and requests an award of damages including, but not limited to compensatory damages, including

any and all recoverable economic and noneconomic loss, punitive damages, reasonable attorneys' fees and costs, and other relief as permitted under the law and as this Court deems just and proper.

## JURY DEMAND

The Plaintiff demands a trial by jury of eight on all issues triable by a jury.

## CERTIFICATION

I hereby certify that Plaintiff has not brought a similar or related lawsuit encompassing the claims brought in this matter.

Respectfully Submitted,

**MARK D. SCHWARTZ, ESQUIRE**

By:  /s/Mark D. Schwartz
  Mark D. Schwartz, Esquire (Pa ID #30527)
  300 Sandcastle Drive
  BRYN MAWR, PA 19010
  Telephone & Fax 610 525-5534
  Markschwartz6814@gmail.com

**THE PEARLMAN LAW FIRM, PLLC**

By:      /s/ Jason L. Pearlman
  Jason L. Pearlman, Esquire (Pa ID #93879)
  Two Bala Plaza, Suite 300
  Bala Cynwyd, PA 19004
  610-660-7793
  jpearlman@pearlmanlawfirm.com

DATED: October 29 ,2020                    Attorneys for Plaintiff Vivian Martin

14

## VERIFICATION

I, Vivian Martin, do hereby certify that I am the Plaintiff in the within action, and that the facts contained in the foregoing Complaint are true and correct to the best of my knowledge, information and belief. I do further understand that these statements are made subject to the penalties of 18 Pa.C.S. § 4904, relating to unsworn falsifications to authorities.

Dated: 10/29/2020

_Vivian Martin_
Vivian Martin